BRIAN T. FITZSIMONS (*pro hac vice pending*)
Email: fitzsimonsb@sec.gov
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549-5020
Telephone: (202) 551-5905

LOCAL COUNSEL:

RUTH C. PINKEL (Cal. Bar No. 164470)
Email: pinkelr@sec.gov
Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Telephone: (323) 965-3322
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>DAVID P. ORTIZ, and DAVEGLO INVESTMENT GROUP, INC.<br><br>                    Defendants. | Case No. 2:25-cv-08610<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"),
for its Complaint against David P. Ortiz and DaveGlo Investment Group, Inc.,
alleges as follows:

### JURISDICTION AND VENUE

1.     The Commission brings this action pursuant to the authority
conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §§ 77t(b)],
Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the
Advisers Act [15 U.S.C. § 80b-9(d)].

2.     This Court has jurisdiction over this action pursuant to Sections
20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)], Sections
21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and Sections
209(d), 209(e), and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e),
and 80b-14(a)].

3.     Defendants, directly or indirectly, have made use of the means or
instruments of transportation or communication in interstate commerce, or of a
means or instrumentality of interstate commerce, or of the mails, in connection
with the transactions, acts, practices, and courses of business alleged in this
Complaint. Among other things, Defendants engaged in interstate emails and
telephone calls with clients and Resolute personnel.

4.     Venue lies in this District pursuant to Section 22(a) of the Securities
Act [15 U.S.C. §77v (a)], Section 27 of the Exchange Act [15 U.S.C. §78aa (a)],
and Section 214 of the Advisers Act [15 U.S.C. §80b-14] because Defendants
transacted business here, including certain of the acts complained of in this
Complaint, and because Defendants reside and maintain a principal place of
business in Whittier, California.

5.     Defendant Ortiz and the Commission executed tolling agreements
that tolled the running of any applicable statute of limitation from October 8, 2024
to July 5, 2025. Defendant DaveGlo and the Commission executed tolling

agreements that tolled the running of any applicable statute of limitation from
December 12, 2024 to September 8, 2025. The Defendants' securities law
violations during the Relevant Period are within the five-year statute of limitations
for certain relief as set forth in 28 U.S.C. § 2462.

## SUMMARY

6.     From at least 2020 through 2021 (the "Relevant Period"), Ortiz, a
California resident working through his entities DaveGlo Investment Group, Inc.
("DaveGlo") and David Ortiz Advisors, Inc. ("Ortiz Advisors"), marketed and
sold approximately $18 million of investments in risky, oil and gas securities (the
"Oil and Gas Securities") to approximately 20 retail investors. The Oil and Gas
Securities were sold in a series of unregistered securities offerings sponsored by
Resolute Capital Partners, LLC ("Resolute") and Homebound Resources, LLC
("Homebound"). Through an intermediary company, Beacon Global Group, Inc.
("Beacon Global"), Resolute paid Ortiz transaction-based compensation through
Ortiz's company, DaveGlo.

7.     Ortiz used mass marketing to find investors to purchase the Oil and
Gas Securities. Ortiz placed commercials on Los Angeles area radio stations to
advertise his investment services and promote investment workshops that he
hosted. He hosted the workshops in the offices of Ortiz Advisors located in
Whittier, California. At these workshops, Ortiz discussed investment strategies
and investments with prospective investors, including the Oil and Gas Securities.
Ortiz used these and other means to reach a large audience of prospective
investors for the Oil and Gas Securities.

8.     Many of the individuals to whom Ortiz sold the Oil and Gas
Securities lost their money. The sponsoring entities failed to make interest
payments and return principal to debt investors when notes came due and made
only *de minimis* distributions to equity investors.

9.      Through DaveGlo, Ortiz received $816,934 in transaction-based compensation from Resolute for sales of Oil and Gas Securities during the Relevant Period.

10.      Defendants have never been registered with the Commission in any capacity.

11.      During the Relevant Period, Ortiz acted as an investment adviser through his entity Ortiz Advisors.  He advised clients to invest in the Oil and Gas Securities. Through Ortiz Advisors, Ortiz received fees from clients in exchange for providing investment advice. Ortiz did not disclose to his advisory clients the additional transaction-based compensation he received for selling the Oil and Gas securities, which breached his fiduciary duty to his advisory clients.

12.      Defendants violated the federal securities laws by: (i) actively participating in the offer and sale of the Oil and Gas Securities in securities offerings that were not registered with the Commission or exempt from registration; (ii) acting as brokers in the offer and sale of the Oil and Gas Securities while failing to register with the Commission as, or associate with, a registered broker-dealer; and, with respect to Defendant Ortiz, (iii) failing to disclose to advisory clients his financial conflict of interest in connection with the sale of the Oil and Gas securities.

13.      Defendants participated in unregistered offerings at key points in the chain of distribution of the Oil and Gas Securities, including by actively soliciting purchases from investors in this District and elsewhere in the United States. The Oil and Gas Securities offerings were not registered with the Commission or exempt from registration.

14.      Defendants acted as unregistered brokers and engaged in the business of effecting transactions in securities for others. Defendants actively solicited clients to purchase the Oil and Gas Securities and received transaction-based compensation in return.

15.     Defendant Ortiz also failed to disclose financial conflicts of interest while acting as an investment adviser. Ortiz recommended the Oil and Gas Securities to advisory clients, while failing to disclose to those clients the financial compensation Defendants received from the sale of the securities.

## VIOLATIONS AND RELIEF SOUGHT

16.     As a result of conduct alleged in this Complaint, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c)], and Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)]; and Defendant Ortiz violated Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)].

17.     The Commission seeks a judgment from this Court:

(a)     permanently enjoining Defendants from future violations of Section 5 of the Securities Act [15 U.S.C. §§ 77e] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

(b)     permanently restraining and enjoining Ortiz from violating, while acting as an investment adviser, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)] by using the mails or any means or instrumentality of interstate commerce, directly or indirectly, to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any client or prospective client, about the use of client funds or

compensation to any person, including any associated conflicts of interest;

(c)  permanently restraining and enjoining Ortiz from directly or indirectly, including but not limited to through any entity he owns or controls, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendant Ortiz from purchasing or selling securities for his own personal account;

(d)  ordering Defendants to disgorge, on a joint and several basis, their ill-gotten gains, together with prejudgment interest thereon pursuant to Section 21(d)(3), (d)(5), (d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (5), and (7)]; and

(e)  ordering Defendant Ortiz to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## **DEFENDANTS**

18.  **David Patrick Ortiz, age 63**, resides in Whittier, California. Ortiz previously held Series 6, 63 and 65 licenses prior to the Relevant Period. Ortiz has never been registered with the Commission as a securities broker or associated with a registered broker.  On August 9, 2021, in a settled civil action entitled *Securities and Exchange Commission v. David Ortiz*, No. 21-cv-60590 (S.D. Fla.), in which the Commission alleged misconduct similar to that alleged here—acting as an unregistered broker and selling securities in unregistered offerings—but involving different securities, the U.S. District for the Southern District of Florida entered a consent final judgment against Ortiz. Without admitting or denying the allegations, Ortiz consented to the final judgment that, among other relief,

permanently enjoined him from future violations of Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

19.    **DaveGlo Investment Group, Inc.** is a California company located in Whittier, California. Ortiz owns the company with his wife but is the sole operator. DaveGlo has never been registered with the Commission in any capacity. DaveGlo was a pass-through entity that Ortiz used to receive transaction-based compensation for selling the oil and gas securities.

## OTHER RELEVANT PERSONS AND ENTITIES

20.    **David Ortiz Advisors, Inc.** is a California company located in Whittier, California. Ortiz is the sole owner and operator. The company was registered in California as an investment adviser until October 2021. The company is defunct.

21.    **Beacon Global Group, Inc.** is a Georgia company located in Marietta, Georgia. Beacon Global purports to offer consultancy services to businesses.

22.    **Resolute Capital Partners LTD, LLC** is a Nevada company with offices in Texas, California and Minnesota. Resolute created numerous oil and gas debt and equity investment vehicles using oil and gas wells identified by Homebound and its affiliates.

23.    **Homebound Resources, LLC** is a Texas company located in Irving, Texas. Homebound acted as a project sponsor for Resolute's offerings and was responsible for identifying and purchasing the oil and gas wells in which the Resolute investment vehicles owned working interests.

24.    **Thomas Joseph Powell ("Powell")**, age 53, is a resident of Reno, Nevada. Powell was the owner of Resolute and other related entities and served as the Senior Managing Partner of Resolute during the Relevant Period.

25.    **Stefan Tiberiu Toth ("Toth")**, age 48, is a resident of Frisco, Texas. Toth is the founder, co-owner, Chairman and Chief Executive Officer of

Homebound Financial Group, LP, and also operated and controlled its subsidiaries, including Homebound, during the Relevant Period.

26.     A 2021 Commission Order found that Homebound, Resolute, Powell, and Toth violated registration and anti-fraud provisions of the federal securities laws. *See In the Matter of Resolute Capital Partners, Ltd, LLC, et al.*, AP File No. 3-20597 (Sept. 24, 2021) (the "Commission Order"). In particular, the Commission Order found that Homebound, Resolute, Powell, and Toth sold the Oil and Gas Securities in unregistered offerings that were not exempt from registration. It also found that their offering disclosures were inadequate and that they made materially misleading statements in marketing the Oil and Gas Securities. The misleading statements included insufficiently supported oil production projections, assertions about potential tax benefits that were unavailable to certain investors, and incomplete disclosures about potential uses of investor funds, including the amount of funds that would be used for payments to prior debt and equity investors.

27.     Each of Homebound, Resolute, Powell, and Toth reached a settlement with the Commission, neither admitting nor denying the Commission's findings. The Commission Order found that Homebound, Resolute, Powell, and Toth violated Sections 5(a) and (c) and 17(a)(2) and (3) of the Securities Act, and found that Powell and Toth additionally violated Section 15(a) of the Exchange Act.

## FACTS

### I.    The Unregistered Offerings of the Oil and Gas Securities

28.     The Oil and Gas Securities offered and sold by Resolute and Homebound included both equity securities and debt securities. The securities were offered and sold throughout the Relevant Period.

29.     The equity securities were membership interests in pooled investment vehicles that purchased a percentage interest in a set of oil and gas

wells identified and purchased by Homebound, including, for example, an offering titled Advantage Capital Holdings I. The offering materials for these equity securities stated that investors could expect monetary distributions from revenue earned by the wells' oil or gas production and revenue from any subsequent sale of the wells.

30.     The debt securities were promissory notes issued by subsidiaries of Homebound, including for example, offerings titled Choice Energy Holdings III and PRMH Lenders Fund IV. The offering materials for these debt securities stated that the proceeds would be used by a subsidiary of Homebound to acquire oil and gas leases, among other things. The offering materials promised fixed interest payments ranging between 8% to 12% and the return of capital upon expiration of the notes.

31.     The Oil and Gas Securities were "securities" within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. The equity securities involved investors paying money to purchase membership interests, a common enterprise, and a reasonable expectation of profits based on the efforts of third parties who identified, acquired and drilled the wells. The promissory notes were "notes" as included in the definition of "security" set forth in Section 2(a)(1) of the Securities Act.

32.     The offerings of Oil and Gas Securities were required to be registered with the Commission under Sections 5(a) and (c) of the Securities Act or otherwise qualify for an exemption from registration. During the Relevant Period, no registration statement was filed or in effect for any offering of Oil and Gas Securities, and no exemption from registration applied to these securities offerings.

## II. Ortiz Contracted with Beacon Global to be a "Referral Agent" for Resolute

33.    On October 12, 2018, Beacon Global entered into a "Master Services Agreement" with Resolute. The agreement obligated Beacon Global to provide "support and compliance services" to Resolute. This included Beacon Global contracting with "Referral Agents" who would "refer" investors to Resolute for potential investment in the Oil and Gas Securities. Beacon Global was also required to provide "payment services" to Resolute by receiving a monthly ACH transfer from Resolute and using the funds to compensate the "Referral Agents." The agreement stated that Beacon Global was to receive compensation, on a monthly basis, of the greater of (a) $20,000 or (b) 0.4% of monies brought in by the "Referral Agents." The agreement also provided for reimbursement of Beacon Global's expenses.

34.    On October 23, 2018, Ortiz entered into an agreement with Beacon Global to act as a "Referral Agent" (or "Referral Contractor," as the agreement states) for Resolute. The "Referral Contractor Agreement" provided that Beacon Global would compensate Ortiz for "referring" investors to Resolute for investment in the Oil and Gas Securities. It specified that Ortiz would be paid both a monthly fee and additional transaction-based compensation for his efforts. On July 21, 2020, Ortiz, through his entity DaveGlo, entered into a new "Referral Contractor Agreement," which updated the terms of Ortiz's compensation, but similarly provided that Beacon Global would compensate Ortiz for his "referral" of investors to Resolute.  Beacon Global ultimately paid all compensation to Ortiz through DaveGlo.

35.    The agreements prohibited Defendants, as "Referral Contractors," from engaging in certain activities. Among other things, Defendants were not permitted to:

a. "Provide to prospective investors or lenders ('Prospects') any offering documents related to investment opportunities";

b. "Sell any securities or engage in any sales efforts";

c. "'Pre-sell' securities offered by [Resolute] in order to gauge a Prospect's interest in an investment";

d. "Solicit any Prospect for investment";

e. "Make any recommendation with respect to a potential investment";

f. "Give any advice or express any opinion with respect to a potential investment, or its advantages or disadvantages";

g. "Conduct any suitability analysis, conduct any due diligence, provide any valuation services, or provide any analysis of a potential investment";

h. "Do any advertising or mass marketing";

i. "Modify existing or create new educational materials"; and

j. "Compensate another person, entity, or other third party based on a referral's investment into any product."

As described below, Defendants engaged in sales activities despite the foregoing prohibitions in the agreements.

### III.    Defendants' Sales Activity Relating to the Oil and Gas Securities

36.    Although the "Referral Contractor Agreements" purported to limit his services to finding and referring potential investors to Resolute, Defendants in fact participated in the offer and sale of the Oil and Gas Securities to investors.

37.    Defendants used mass marketing techniques to find investors to purchase the Oil and Gas Securities. Defendants used Los Angeles area radio commercials to advertise Ortiz's investment services and promote investment workshops that he hosted. Ortiz hosted the workshops in the Ortiz Advisors

offices located in Whittier, California. At these workshops, Ortiz discussed with prospective investors investment strategies and investments, including the Oil and Gas Securities. Ortiz used these and other means to reach a large audience of prospective investors for the Oil and Gas Securities.

38.     Ortiz discussed and described the Oil and Gas Securities at his workshops, which were typically attended by 6 to 12 prospective investors. At the workshops, Ortiz described the benefits of the Oil and Gas Securities, including the promissory notes. Ortiz described the promissory notes as low risk because they were secured by issuer assets, provided returns starting at 8%, and had third-party due diligence reports.

39.     Ortiz described the Oil and Gas Securities in detail to prospective investors. He provided prospective investors with Resolute marketing and offering documents for the securities, which he reviewed and discussed with them. Ortiz described to prospective investors the purported success of previous investors in the Oil and Gas Securities. Ortiz recommended that the prospective investors purchase the Oil and Gas Securities.

40.     Ortiz had investors complete suitability questionnaires.

41.     As to certain investors, through his entity Ortiz Advisors, Ortiz also was an investment adviser and received fees from these clients for providing investment advice and managing the clients' investments. Ortiz advised clients to invest in the Oil and Gas Securities without disclosing to these clients the financial compensation he received from Resolute/Beacon, which was a breach of fiduciary duty to his advisory clients.  Following his recommendation, certain of Ortiz's clients purchased the Oil and Gas Securities.

42.     Through Defendants, investors made investments in multiple of the Oil and Gas Securities offerings, including offerings titled Advantage Capital Holdings I, Choice Energy Holdings III, and PRMH Lenders Fund IV.

43.     For example, after hearing radio advertisements for David Ortiz Advisors, Investor A paid a fee for Ortiz's advisory services. Based on Ortiz's recommendation, Investor A invested $780,000 in PRMH Lenders Fund IV in January 2020. He quickly lost nearly all of his money.  Investor A received only a few months of interest payments from Resolute before payments stopped, and he never received a return of the principal.

44.     After hearing radio advertisements for David Ortiz Advisors, Investor B paid a fee for Defendants' advisory services. Based on Ortiz's recommendation, Investor B invested $676,000 in PRMH Lenders Fund IV and Choice Energy Holdings III in or around April 2020.  Investor B received approximately $156,000 in interest payments and a partial return of the principal before payments stopped.

45.     Defendants' contribution to the distribution of the Oil and Gas Securities was not *de minimis*. To the contrary, they generated approximately $18 million of sales for Resolute during the Relevant Period.

## IV.    <u>Defendants' Compensation</u>

46.     During the Relevant Period, Defendants sold approximately $18 million of the Oil and Gas Securities to retail investors, and received from Resolute, through Beacon Global, $816,934 in transaction-based compensation. This compensation was purportedly calculated based on the two "Referral Contractor Agreements" between Ortiz and Beacon Global.

47.     The first agreement, the October 2018 "Referral Contractor Agreement," provided that Ortiz would receive a monthly contractor fee of $16,734.59, as well as a referral fee of $2,430 for every investor Ortiz placed with Resolute. The agreement also provided that Ortiz's compensation could increase pursuant to bi-weekly "quality assessments" of Ortiz's "referrals" and certain "referral fee multipliers." The "quality assessments" allowed Beacon Global and Resolute to adjust Ortiz's compensation based on how much investment money he

was bringing into Resolute. The "referral fee multipliers" provided for additional compensation to Ortiz for longer term debt securities that he sold. For example, Ortiz was compensated more for selling a two-year note than a one-year note. Ortiz was compensated through his entity DaveGlo.

48.     The second agreement, the July 2020 "Referral Contractor Agreement" between Beacon Global and DaveGlo, provided for tier-based "referral" fees, with "Directors Club" being the highest tier. The agreement also had "quality assessment" provisions and provided that "[a]dditional Marketing Fees may be provided at the sole discretion of the parties." Under both agreements, Resolute, through Beacon Global, paid to Ortiz and DaveGlo transaction-based compensation based on the dollar amount of investments and type of securities Ortiz sold. The tier designations provided for higher compensation to Defendants based on the aggregate amount of money Ortiz's clients invested in the Oil and Gas Securities.

49.     Ortiz was paid for performance and monies invested—transaction-based compensation—through the use of salesperson "tiers," "referral fee multipliers" and "quality assessments." Ortiz, through his entity DaveGlo, received $560,684 in transaction-based compensation in 2020, and $256,250 in 2021.

## CLAIMS FOR RELIEF

### Count I

**(Violations of Sections 5(a) and 5(c) of the Securities Act (Both Defendants))**

50.     The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 49 inclusive, as if they were fully set forth herein.

51.     As detailed above, Defendants, by engaging in the securities offerings alleged in this Complaint, directly or indirectly:

- 13 -                                        •

      (a) made use of the means or instruments of transportation or

communications in interstate commerce or of the mails to sell

securities through the use or medium of any prospectus or

otherwise, without a registration statement in effect as to such

securities;

      (b) carried or caused to be carried through the mails or in interstate

commerce, by any means or instruments of transportation,

securities for the purpose of sale or for delivery after sale,

without a registration statement in effect as to such securities;

and

      (c) made use of the means or instruments of transportation or

communication in interstate commerce or of the mails to offer to

sell through the use or medium of a prospectus or otherwise

securities as to which no registration statement had been filed.

52.  There were no applicable exemptions from registration for the offerings Defendants engaged in as described herein.

53.  By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c).

## Count II

### (Violations of Section 15(a) of the Exchange Act (Both Defendants))

54.  The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 49 inclusive, as if they were fully set forth herein.

55.  As detailed above, Defendants, directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as a broker or dealer, effected transactions in the purchase or sale of securities, while Defendants were not registered with the Commission as a broker or dealer and

while Defendants were not associated with an entity registered with the Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

56. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## Count III

### (Violations of Section 206(2) of the Advisers Act (Defendant Ortiz))

57. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 49 inclusive, as if they were fully set forth herein.

58. By engaging in the acts and conduct alleged in this Complaint, Defendant Ortiz acted as an investment adviser to his clients within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11), because, for compensation, he engaged in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

59. As detailed above, Defendant Ortiz, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, while acting as an investment adviser, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon any client or prospective client, with at least negligence.

60. As an investment adviser, Defendant Ortiz owed his client a fiduciary duty of utmost good faith, undivided loyalty, and care to make full disclosure to them of all material facts, as well as the duty to act in their best interests, and not to act in his own interests to the detriment of his clients.

61. Defendant Ortiz breached his fiduciary duty to his clients and engaged in fraudulent conduct by not disclosing conflicts of interest to his clients.

62.     By reason of the foregoing, Defendant Ortiz violated, and unless enjoined, is reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

A.     Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 5 of the Securities Act [15 U.S.C. § 77e]; and Section 15(a) of the Exchange Act [15 U.S.C. § 78(o)];

B.     Permanently restraining and enjoining Ortiz from violating, while acting as an investment adviser, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)] by using the mails or any means or instrumentality of interstate commerce, directly or indirectly, to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any client or prospective client, about the use of client funds or compensation to any person, including any associated conflicts of interest;

C.     Permanently restraining and enjoining Ortiz from, directly or indirectly, including but not limited to through any entity he owns or controls:

participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Ortiz from purchasing or selling securities for his own personal account;

D.     Ordering Defendants to disgorge, on a joint and several basis, all funds received from their illegal conduct, together with prejudgment interest

thereon, pursuant to Sections 21(d)(3), (d)(5), (d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (5), and (7)];

     E.     Ordering Defendant Ortiz to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

     F.     Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Date: September 11, 2025

Respectfully submitted,
*/s/ Ruth C. Pinkel*
Local Counsel
Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Telephone: (323) 965-3322
Email: pinkelr@sec.gov

Brian T. Fitzsimons (*pro hac vice pending*)
Securities and Exchange Commission
100 F Street NE
Washington, D.C. 20549
Telephone: (202) 551-5905
Email: fitzsimonsb@sec.gov

Attorneys for Plaintiff

Of Counsel
Brian O. Quinn
David T. Frisof